UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SACRED HEART HEALTH SERVICES and AVERA HEALTH & LEWIS & CLARK SPECIALTY HOSPITAL, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDWEST MEDICAL INSURANCE COMPANY,<br><br>Defendant. | 4:20-CV-04149-LLP<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL<br><br>DOCKET NO. 23 |

## INTRODUCTION

This matter is pending before the court on plaintiffs' complaint alleging two counts of breach of contract and two counts of bad faith against defendant arising out of defendant's alleged failure to participate in settlement of various claims arising under plaintiffs' insurance policies issued by defendant. See Docket No. 1. Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. Id. Now pending is plaintiffs' motion to compel a third party to comply with a subpoena *duces tecum* served on that party. See Docket No. 23. This motion was referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). See Docket No. 27.

**FACTS**

A physician named Dr. Allen Sossan became the object of multiple lawsuits against him alleging he had performed unnecessary surgeries. The limits of Dr. Sossan's medical malpractice policy were quickly exceeded. Injured parties also sued the various hospitals and other entities under whose auspices Dr. Sossan practiced medicine. Those entities included lawsuits against the plaintiffs herein.

Plaintiffs are insured by defendant Midwest Medical Insurance Company ("MMIC"). All the Sossan cases were pending before the same circuit court judge in South Dakota state court. Plaintiffs attempted to extricate themselves from the lawsuits by filing summary judgment motions. After the circuit court denied their motions, an omnibus mediation session was scheduled to address all of the Sossan cases.

Plaintiffs allege in their complaint that MMIC refused to participate in settlement negotiations on behalf of plaintiffs in the Sossan cases unless plaintiffs agreed to forfeit any claims they may have had against MMIC for bad faith failure to pay insurance benefits. Plaintiffs refused to accept this condition. MMIC apparently initially attended the Sossan mediation, but left before the process concluded. Plaintiffs allege they were forced to settle the Sossan claims out of their own pockets. They now seek recovery of the contract benefits they believe they were entitled to under their insurance policies with MMIC as well as damages for bad faith refusal by MMIC to pay those benefits.

When the injured parties brought their myriad suits against Dr. Sossan, at least thirteen claims were also asserted against Dr. Donald Swift for allegedly negligently referring patients to Dr. Sossan. Dr. Swift, who was also insured by MMIC, was represented by the Sioux Falls law firm of Evans, Haigh & Hinton, LLP ("Evans law firm"). Acting on behalf of Dr. Swift, the Evans law firm settled the claims brought against Dr. Swift. Dr. Swift alleges MMIC refused to participate in the settlement of these claims and he was forced to settle the claims with his own money. See Docket No. 25-1. After settling the claims, Dr. Swift assigned any rights he may have to plaintiffs, including all his files from his trial counsel regarding the Sossan medical malpractice cases. Id.

Plaintiffs served the Evans law firm with a subpoena *duces tecum* seeking complete copies of each of their 13 files associated with their representation of Dr. Swift. See Docket No. 25-2. The Evans law firm responded by lodging three objections to this subpoena. See Docket No. 25-3. Thereafter, plaintiffs filed this instant motion to compel.

## DISCUSSION

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena for the production of documents on a nonparty, with notice to the other parties in the litigation. See FED. R. CIV. P. 45(a). The nonparty on whom the subpoena is served must be protected from undue burden or expense. Id. at subsection (d)(1).

A subpoena *must* be quashed or modified if it requires the disclosure of privileged or other protected matter if there is no exception or waiver

3

applicable, or if the subpoena subjects a person to undue burden.  Id. at subsection (d)(3)(A).  A subpoena *may* be quashed or modified to protect a person affected by a subpoena if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information.  Id. at subsection (d)(3)(B).

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."  Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam Steinman, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. Oct. 2020 update) (hereinafter "Fed. Prac. & Proc. Civ.").  As with other discovery, the relevancy issue at the time a subpoena is served is broad—the court does not evaluate whether the evidence sought is admissible, but rather whether the information is relevant to a claim or defense and is nonprivileged.  Id.  The court also considers whether the information is likely to lead to the discovery of admissible evidence.  Id.  The party seeking to quash or modify a subpoena bears the burden of demonstrating grounds for quashing it.  Id.

As indicated above, the requesting party must establish the relevance of the discovery sought as an initial threshold matter.  Plaintiffs argue that one of the issues they will bear the burden of proving in this litigation against MMIC is that the settlements they reached with persons injured by Dr. Sossan were reasonable.  See Docket No. 26 at p. 6.  Plaintiffs seek the information in the Evans law firm's files for Dr. Swift so as to compare how the Evans law firm

4

valued some of the claims of some patients injured by Dr. Sossan and the amount paid in settlement of those claims.  Id.  Plaintiffs claim they need to know the names of the injured parties in order to make the comparison between claims plaintiffs settled and claims Dr. Swift settled.  Id.

In its response to plaintiffs' motion to compel, the Evans law firm explains that the subpoena served on it will require production of documents which summarize the medical records of the persons who were injured by Dr. Swift and, by extension, Dr. Sossan.  See Docket No. 29.  Although these documents are not themselves medical records, they summarize and set forth some details from the injured parties' medical records.  Id.  Accordingly, the Evans law firm is willing to produce those documents upon this court's order, but did not want to produce them without a court order for fear that it would be accused of violating privacy laws related to patients' medical records.  Id.

In addition, the Evans law firm seeks an order from the court that it need only produce the paper file in Dr. Swift's cases as, at the time the Evans law firm represented Dr. Swift, the law firm kept all its files in paper form.  Id.  If an email was sent or received, the law firm printed it out and placed it in the paper file.  Counsel for the Evans law firm represents it believes an electronic search of the law firm's records will not reveal any additional documents.  Id.  Also, counsel represents he has already spent 8 hours searching through and preparing the Dr. Swift files for production to plaintiffs.  Id.  If the court is going to require the Evans law firm to conduct electronic searches for

5

additional records, counsel requests that plaintiffs be required to pay counsel for his time in making such searches. Id.

Regarding the Evans law firm's concern about patient privacy, it cites to only two specific statutes: SDCL §§ 19-2-13 and 19-19-503. Id. at p. 2. It also states it is concerned about violating "other healthcare privacy laws," but does not specifically mention any other statutes of concern. Id. The Health Insurance Portability and Accountability Act ("HIPAA") comes to mind as an obvious other source of privacy protection for healthcare laws. See Pub. L. No. 104-191, §§ 261-64, 110 Stat. 1936 (1996).

Plaintiffs assert that HIPAA specifically allows the disclosure of private healthcare data in a judicial proceeding in response to an order of the court. See 45 C.F.R. § 164.512(e). Thus, if this court were to order the Evans law firm to disclose the documents called for by plaintiffs' subpoena, such disclosure would not subject the law firm to potential HIPAA liability.

Turning to the two state statutes cited by the Evans law firm, the first, SDCL § 19-2-13 states the following:

> The production of a record of a healthcare provider, whether in litigation or in contemplation of litigation, does not waive any privilege which exists with respect to the record, other than for the use in which it is produced. Any person or entity receiving such a record may not reproduce, distribute, or use it for any purpose other than for which it is produced. This rule does not bar any person or entity from complying with any court order, or state or federal law or regulation authorizing disclosure of information that otherwise would be protected by this rule.

Thus, the South Dakota statue, like HIPAA, allows an exception for disclosure of records pursuant to court order.

6

The second state statute cited by the Evans law firm is SDCL § 19-19-503, which sets the general rule of patient-physician privilege.  See SDCL § 19-19-503(b).  That privilege is subject to waiver if the patient files a lawsuit which places his or her medical condition into issue.  SDCL § 19-19-503(d)(3).

Clearly, for purposes of the Sossan/Swift litigation, the patients injured by Dr. Sossan waived their patient-doctor privilege as to their medical conditions *for purposes of that litigation*.  However, that does not mean they have waived their privilege for all time and for all purposes.

The District of Minnesota grappled with the extent of a waiver of patient-physician privilege in Cerro Gordo Charity v. Fireman's Fund Ins. Co., 623 F. Supp. 877 (D. Minn. 1985).  In that case, Leonard Richards had sued his insurance companies in the 1970s to obtain insurance benefits for some psychiatric care Richards received.  Id. at 878.  In order to prove that the treatment he had received was covered by the insurance policies, at trial Richards called his psychiatrist who testified in open court about his treatment of Richards.  Id. at 879-80.

Later, litigation was filed in federal district court over the proceeds of some life insurance policies which Richards purchased on the life of May Wilson, whom Richards then murdered or had someone else murder.  Id. at 878.  In the life insurance litigation, a transcript of Richards' psychiatrist's testimony from the earlier proceeding was read into evidence, a fact Richards argued was error in his post-trial motion.  Id. at 879-80.

7

The court noted that a prior waiver of the patient-physician privilege in one proceeding does not entail a wholesale waiver of the privilege for all subsequent purposes and proceedings. Id. at 880. "Nonetheless, where a selective disclosure of confidential information occurs, a finding of limited waiver as to the same evidence is warranted." Id. The purpose of the privilege was to encourage the patient to be fully forthcoming and honest in his statements made in expectation of medical care. Id. Where a limited disclosure is made, and that same evidence is used again later, the goal of the patient-physician privilege is not undermined. Id.

The court concludes the same herein. Those who were injured by Dr. Sossan via Dr. Swift waived their privilege as to their medical information for purposes of their lawsuits. This lawsuit is closely related, concerning the determination of where responsibility lies for the settlement monies paid by plaintiffs to Dr. Sossan's victims. Furthermore, the information being disclosed is the same as was revealed in the Dr. Swift lawsuits.

Nonetheless, to limit the extent of the usage of the medical information of these patients, the court requires plaintiffs, defendant, and the Evans law firm to fashion a protective order regarding these records. At a minimum, the protective order should provide for filing under seal of any document identifying a patient and for filing of redacted documents from which identifying information has been removed. The protective order should also prohibit further dissemination or disclosure of the documents beyond this lawsuit and the attorneys, clients, and experts involved in this lawsuit. If the

parties cannot agree upon terms of a protective order within 15 days of the date of this order, they should notify the court and the court will impose one of its own.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that plaintiffs' motion to compel [Docket No. 23] is granted in full. The Evans law firm shall comply fully with the subpoena *duces tecum* served upon it. The law firm is required to produce only the paper file as it appears in their own records without the necessity of conducting any further search for electronic records. No attorney's fees or costs will be awarded for the filing of this motion. It is further

ORDERED that plaintiffs, defendant and the Evans law firm shall, within 15 days of today's date, agree upon and submit to the court a protective order regarding private patient information in the subpoenaed documents in accord with the court's suggestions above. Alternatively, if an agreement cannot be mutually reached within 15 days, the parties shall so notify the court and the court will issue a protective order of its own making.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 23rd day of February, 2021.

BY THE COURT:

*Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge